UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

United States of America    :
                            :
      v.                    :      File No. 2:02-CR-2
                            :
Bryan Poulin                :

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
(Paper 57)

Defendant Bryan Poulin, proceeding *pro se*, has filed
a motion to vacate, set aside or correct his sentence
pursuant to 28 U.S.C. § 2255.  (Paper 57).  In his
motion, Poulin contends: (1) that his sentence violated
the Supreme Court's holding in Blakely v. Washington, 124
S. Ct. 2531 (2004); (2) that his attorney was
ineffective; (3) that his plea was entered without
knowledge of the drug amounts that would be considered at
sentencing; and (4) that his sentence violated the
Supreme Court's holdings in Ring v. Arizona, 536 U.S. 584
(2002) and Apprendi v. New Jersey, 530 U.S. 466 (2000).
The government has filed an opposition.  (Paper 62).  For
the reasons set forth below, I recommend that the motion
be DENIED.

Factual Background

On January 23, 2002, Poulin was indicted on one
count of possession of a controlled substance with intent

to distribute in violation of 21 U.S.C. § 841(a)(1).  The
indictment also included a count for forfeiture of the
$1,222 that was in Poulin's possession at the time of his
arrest.  On September 3, 2002, Poulin entered a guilty
plea to the drug charge, and on March 28, 2003, the Court
sentenced him to 84 months in prison.  Poulin was the
sole defendant in this case.

At the sentencing hearing, witnesses testified that
Poulin had sold small quantities of cocaine on numerous
occasions prior to his arrest.  Sentencing Tr. at 101.
At the time of his arrest, Poulin was found with
approximately 150 grams of cocaine.  Id. at 83, 101.  In
light of this evidence, the Court found that Poulin's
relevant conduct included drug activity involving more
than 500 grams but less than two kilograms of cocaine,
and sentenced him accordingly.  Poulin appealed his
sentence, and the Second Circuit affirmed on November 6,
2003.

Poulin now challenges his plea and sentence on
several grounds.  First, he claims that because the
indictment did not charge him with a specific drug
amount, his sentence violated Blakely.  He next claims

that he was sentenced for drug quantities that were attributable only to his "co-defendants," and that his attorney's failure to object on this ground constituted ineffective assistance of counsel.  He also contends that the witnesses who testified at his sentencing were under the influence of drugs, and that his attorney should have entered "in the record, the psychological effects of illegal substances . . . ."  (Paper 57 at 5).  Poulin's third claim of ineffective assistance of counsel argues that because the drugs in question were "cut" to a significant degree, his attorney should have argued that the actual amount of controlled substance was less than half that found by the Court.  Id.

Poulin also claims that prior to his plea, he was not informed "that his sentence would be enhanced under relevant conduct for quantities of drugs attributed to his co-defendants," thus resulting in a plea that was not knowing, voluntary and intelligent.  Id.  These additional quantities of drugs, as well as the drug quantities disclosed by witnesses at sentencing, also allegedly rendered Poulin's sentence invalid under Ring and Apprendi.  Poulin's final claim is that Blakely was

3

an "'intervening change in the law'" that allows the
Court to revisit his sentence.  Id. at 6.

## Discussion

I.  *Blakely* Claim

In Blakely, the Supreme Court held that the State of
Washington's sentencing guidelines violated the Sixth
Amendment.  The Court specifically declined to extend its
holding to the Federal Sentencing Guidelines.  124 S. Ct.
at 2538 n.9.  In United States v. Booker, 125 S. Ct. 738
(2005), however, the Supreme Court held that the Federal
Sentencing Guidelines also violated the Sixth Amendment
"to the extent that they allowed the maximum sentence
authorized by a guilty plea or a verdict to be increased
based on findings of fact (other than the fact of a prior
conviction) made by the judge."  Guzman v. United States,
404 F.3d 139, 141 (2d Cir. 2005) (citing Booker, 125 S.
Ct. at 755-56).

The Second Circuit has held that Booker does not
apply retroactively to cases on collateral review.  Id.
at 144.  Specifically, the Guzman court determined that
although Booker established a new rule of constitutional
law, the rule was procedural rather than substantive.

Id. at 141-42.  The Guzman decision held that the rule announced in Booker did not establish a "watershed rule 'implicating the fundamental fairness and accuracy of the criminal proceedings,'" and thus could not be applied retroactively.  Id. at 142-43 (quoting Schriro v. Summerlin, 124 S. Ct. 2519, 2523 (2004)).

Accordingly, the law in this Circuit is that Booker is not retroactive, "i.e., it does not apply to cases on collateral review where the defendant's conviction was final as of January 12, 2005, the date that Booker was issued."  Id. at 144.  Similarly, courts in this Circuit have uniformly held that Blakely, which was decided in 2004, may not be applied retroactively. See Green v. United States, 397 F.3d 101, 103 (2d Cir. 2005) ("[N]either Booker nor Blakely apply retroactively to [petitioner's] collateral challenge" for purposes of second or successive motion); Carmona v. United States, 390 F.3d 200, 202 (2d Cir. 2004) (the Supreme Court has yet to make Blakely retroactive on collateral review); see also Steele v. United States, 2005 WL 704868, at *16 n. 18 (S.D.N.Y. Mar. 29, 2005); Nnebe v. United States, 2005 WL 427534, at *9 (S.D.N.Y. Feb. 22, 2005).

Poulin contends that retroactivity is not an issue here, since Blakely "only clarified certain questions which must be made by a jury or admitted by a defendant." (Paper 65 at 9). He also argues that the type and amount of drug needed to be included in the indictment. "[S]tatute 841(a)(1) has always been intended by Congress to require both the type of drug and amount of drug which a person charged under the statute will be held criminally liable. The decision in Blakely only triggered the proper interpretation of the statute, but did not change the construction of the statute itself." (Paper 57 at 11).

As discussed below with respect to Poulin's claims under Apprendi and Ring, the Second Circuit has determined that in some § 841 cases, drug quantity is an element that must be pleaded and either proved to a jury or admitted by the defendant. United States v. Gonzalez, 420 F.3d 111, 131 (2d Cir. 2005). The Gonzalez decision was based primarily upon Apprendi, with some reference to Booker, and is inapplicable here.[1] Id. at 122-131. To the extent that Poulin's argument relies directly on

---

[1] As discussed below, Gonzalez applies to "aggravated" § 841 offenses involving specified quantities of drugs.

Blakely or Booker, his reliance is misplaced.  Because
Poulin did not seek a writ of certiorari after his appeal
to the Second Circuit, his conviction and sentence became
final on February 4, 2004, 90 days after his sentence was
affirmed on appeal.  See Harris v. United States of
America, 380 F. Supp. 2d 278, 285 (S.D.N.Y. 2005).  The
Blakely decision was issued on June 24, 2004.  542 U.S.
at 296.  Booker, as noted above, was issued in 2005.  125
S. Ct. at 738.  Because neither case may be applied
retroactively, any claims relying on those cases must, in
this instance, be DENIED.

II.   Ineffective Assistance of Counsel

     Poulin's claims of ineffective assistance of counsel
are also without merit.  "[T]he proper standard for
attorney performance is that of reasonably effective
assistance."  Strickland v. Washington, 466 U.S. 668, 687
(1984).  The essence of an ineffective assistance claim
is that counsel's unprofessional errors so upset the
adversarial balance between defense and prosecution that
the trial was rendered unfair and the verdict rendered
suspect.  See Kimmelman v. Morrison, 477 U.S. 365, 374
(1986).  Thus, a defendant must establish (1) that

counsel made errors so serious that he was deprived of
reasonably competent representation and (2) that
counsel's deficient performance prejudiced the defense.
See Hernandez v. United States, 202 F.3d 486, 488 (2d
Cir. 2000) (citing Strickland, 466 U.S. at 687-691).

To satisfy the first prong, the petitioner must show
that counsel's representation fell below an objective
standard of reasonableness.  More specifically, the
petitioner must show that "counsel made errors so serious
that counsel was not functioning as the counsel
guaranteed by the Sixth Amendment and the deficient
performance so undermined the proper functioning of the
adversary process that the trial cannot be relied upon as
having produced a just result." Strickland, 466 U.S. at
687; see also United States v. DiTommaso, 817 F.2d 201,
215 (2d Cir. 1987).  In conducting the ineffective
assistance inquiry, a court must maintain a strong
presumption that counsel's conduct falls within the wide
range of reasonable professional assistance.  See
Strickland, 466 U.S. at 689.  The court should recognize
that counsel is strongly presumed to have rendered
adequate assistance and made all significant decisions in

8

the exercise of reasonable professional judgment.  <u>See</u>
<u>id.</u> at 690.  In evaluating counsel's performance, the
court is to look to "an objective standard of
reasonableness . . . under prevailing professional norms"
and apply this standard in light of all the circumstances
in the case.  <u>Id.</u> at 688, 690.

In evaluating the prejudice component of <u>Strickland</u>,
a court must determine whether, absent counsel's error,
it is reasonably probable that the outcome of the
proceeding would have been different.  <u>See</u> <u>Mayo v.</u>
<u>Henderson</u>, 13 F.3d 528, 534 (2d Cir. 1994).  A reasonable
probability is a probability sufficient to undermine
confidence in the outcome.  <u>Strickland</u>, 466 U.S. at 703;
<u>Hurel-Guerrero v. United States</u>, 186 F.3d 275, 282 (2d
Cir. 1999).

Poulin's first ineffective assistance of counsel
argument is that his attorney allowed him to be sentenced
based upon drug amounts that were attributable to his
"co-defendants."  (Paper 57 at 4-5).  As noted above,
Poulin was the sole defendant in this case.  In his
traverse to the government's opposition, Poulin explains
that his argument is based upon the fact that his

sentence was based upon "quantities of drugs not found at
the scene of the actual crime."  (Paper 65 at 3).

The testimony at sentencing showed that Poulin was
involved in multiple drug deals in the months prior to
his arrest.[2]  The Court concluded from this testimony
that 500 grams of cocaine would be an "extremely
conservative" estimate of his relevant drug activity.
Sentencing Tr. at 97.  When Poulin refers to "co-
defendants," he may be referring to witnesses and others
who were involved in his drug dealing.  Nonetheless, the
Court reached its conclusion based upon evidence of drug
quantities that were directly applicable to Poulin.  The
Court should, therefore, reject Poulin's claim that
counsel was ineffective for failure to limit his sentence
to the amount found at the scene of the crime.

Poulin's next argument is that the witnesses at
sentencing were under the influence of drugs, and that
his attorney failed to inform the Court of the effects
that such drugs can have on testimony.  He further argues
that counsel should have moved to suppress these

---

[2]  On appeal, Poulin unsuccessfully challenged the credibility of the
testimony presented at sentencing.  United States v. Poulin, 79 Fed. Appx.
501 (2d Cir. 2003).

10

witnesses' testimony.  At the sentencing hearing, two witnesses testified on cross-examination that they were under the influence of drugs while testifying before the grand jury.  Sentencing Tr. at 40, 62.  Neither witness admitted to being under the influence of drugs at the sentencing hearing itself.  Id. at 39.  Defense counsel subsequently argued that these witnesses' past drug addictions, as well as their admissions of past perjury, rendered their testimony unreliable.  Id. at 92-93.

The sentencing transcript shows that the Court carefully considered the credibility issues with respect to these witnesses.  Id. at 97 ("There's no question that both of the witnesses that were called by the government could be subjected to rigorous attack on cross examination as to their credibility.").  The Court also stated that "courts generally look to corroborating testimony, and also the individual assessment of what that person is saying and perhaps why they are saying it."  Id. at 97-98.  Thus, the Court reached its conclusions with these considerations in mind.  Because the Court did not rely directly on the grand jury testimony, but instead viewed it in the context of drug

11

use and other factors, additional evidence of the effect
of drugs on testimony was unnecessary.  Similarly,
counsel cannot be faulted for failing to suppress this
testimony, since the Court clearly found it useful in
estimating the extent of Poulin's relevant drug activity.

Finally, Poulin contends that his attorney failed to
argue that because the drugs in question had been "'cut'
to a significant degree," the actual amount of controlled
substance was less than that found by the Court.  Under
the Federal Sentencing Guidelines, the weight of a
mixture containing a controlled substance is determined
without regard to purity.  See U.S.S.G. § 2D1.1(c);
United States v. Stephenson, 183 F.3d 110, 119 (2d Cir.
1999).  This argument is, therefore, without merit.

For the reasons set forth above, Poulin's claims of
ineffective assistance of counsel should be DENIED.

III.  Knowing and Intelligent Plea

Poulin's next allegation is that, prior to his plea,
he "was not informed that his sentence would be enhanced
under relevant conduct for quantities of drugs attributed
to his co-defendants.  This resulted in a sentence which
was in excess of the sentence which the Petitioner plead

12

[sic] guilty to." (Paper 57 at 5). As discussed above, witnesses at the sentencing hearing testified about Poulin's relevant drug activity. Their testimony applied only to Poulin's conduct, and the Court made its sentencing determination based, at least in part, upon that testimony.

With respect to what Poulin may have been told at the time of his plea agreement, the Court ensured at the change of plea that Poulin understood the potential consequences of his plea. Specifically, the Court warned Poulin that the maximum penalty for his crime was imprisonment of not more than 20 years. Change of Plea Tr. at 5. The Court also asked Poulin if he understood that

> any promises or predictions as to what sentence you are likely to receive are not binding upon the Court, that based upon your guilty plea I could impose a sentence up to the maximum permitted by law and that you would not have the right to withdraw your plea if those predictions proved to be inaccurate?

Id. at 10-11. Poulin responded that he understood. Id. at 11. Consequently, Poulin cannot now argue that he entered a plea without full knowledge of his potential sentence.

IV.   _Ring_ and _Apprendi_ Claims

     Poulin's final claim is that his sentence violated the Supreme Court's holdings in Ring and Apprendi. Unlike Blakely and Booker, both Ring and Apprendi pre-dated Poulin's sentencing.  In Apprendi, the Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt."  Apprendi, 530 U.S. at 490.  Ring applied Apprendi to determinations of death penalty eligibility.  536 U.S. at 603-09; see Schriro, 124 S. Ct. at 2522-23.  As noted above, the Second Circuit has interpreted Apprendi to also mean that in § 841 cases, regardless of the length of the sentence, drug quantity is an element that must be pleaded and either proved to a jury or admitted by the defendant when the charge is an aggravated offense under § 841(b)(1)(A) or (b)(1)(B).  Gonzalez, 420 F.3d at 131.[3]

     Poulin was charged with an unspecified amount of cocaine, and was therefore sentenced under § 841(b)(1)(C)

---

[3]  In Gonzalez, the Second Circuit used "the term 'aggravated drug offense' to refer to crimes . . . that provide for enhanced penalties for drug trafficking in specified quantities."  Id. at 115 n.2.

with a corresponding maximum sentence of 20 years.  He ultimately received a sentence of 84 months, substantially below the statutory maximum.  Because Poulin's sentence was below the statutory maximum, did not involve an aggravated offense under § 841, and did not involve the death penalty, Apprendi and Ring do not provide grounds for relief under § 2255.[4]

Conclusion

For the reasons set forth above, I recommend that Poulin's motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 (Paper 57) be DENIED.

Dated at Burlington, in the District of Vermont, this 7th day of October, 2005.


/s/ Jerome J. Niedermeier
Jerome J. Niedermeier
United States Magistrate Judge


Any party may object to this Report and Recommendation within 10 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically

---

[4]  Poulin's final argument is that Blakely was an "'intervening change in the law'" that allows the Court to reconsider sentence.  (Paper 57 at 16).  Because the Blakely and Booker decisions cannot be applied retroactively, this argument is without merit.

identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  See Local Rules 72.1, 72.3, 73.1; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(e).